IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-00916-WYD-MEH

MINNESOTA LAWYERS MUTUAL INSURANCE CO., a Minnesota corporation,

   Plaintiff,

v.

JOSEPH R. KING,

   Defendant.

**ORDER**

I.   Introduction and Background:

THIS MATTER is before the Court on Plaintiff Minnesota Lawyers Mutual Insurance Company's ("MLM") Motion to Bifurcate, filed August 3, 2010 [ECF No. 16], Defendant Joseph R. King's Motion to Bifurcate, filed August, 24, 2010 [ECF No. 23], and Defendant King's Motion to Stay, filed August 24, 2010 [ECF No. 22].

MLM initiated this anticipatory declaratory judgment action pursuant to 28 U.S.C. § 2201(a) on April 22, 2010, seeking a declaration of its rights and obligations under a professional liability policy (the "Policy") issued to King for policy periods from July 1, 2007 through July 1, 2010. King is currently a defendant in a civil action in District Court for the City and County of Broomfield, Colorado, Case No. 09CV189, initiated by Plaintiffs Mark Iveson and Jonathan Tepper, arising out of alleged misrepresentations King made regarding a real estate investment opportunity (the "Iveson/Tepper lawsuit").

-1-

According to MLM, King is also a defendant in a soon to be filed case initiated by MMPN LLC, Kenneth Landers and John Landers involving allegations of legal malpractice stemming from the same investment opportunity (the "MMPN complaint").

King made a claim under the Policy seeking defense and indemnification in the Iveson/Tepper lawsuit. MLM initially agreed to provide Plaintiff a defense in the Iveson/Tepper lawsuit under a reservation of rights. MLM contends, however, that upon further investigation, it determined that it was not entitled to provide coverage in either of the two lawsuits because of a specific Policy exclusion, and because King had misrepresented in his insurance application and renewals that he was involved in no other businesses other than the practice of law. On April 14, 2010, MLM rescinded the Policy on the basis of King's alleged misrepresentation regarding his ownership, management, and involvement in the real estate investment opportunity. In addition, MLM denied coverage for both the Iveson/Tepper lawsuit and the MMPN complaint based on Policy Exclusion (3) which provides:

> (3) any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise:
> a. owned in whole or in part
> b. controlled directly or indirectly; or
> c. managed
> by any INSURED, and where the claimed DAMAGES resulted from conflicts of interest with the interest of any client or former client or with the interest of any person claiming an interest in the same or related business enterprise.

MLM then filed this action seeking a declaration that it is entitled to rescission of the Policy and that there is no coverage available to Defendant King under the Policy for the claims asserted in the Iveson/Tepper lawsuit or the MMPN complaint. In addition, MLM

seeks an award of damages resulting from its defense of King in the Iveson/Tepper lawsuit. On June 4, 2010, Defendant filed an Answer and Counterclaim, asserting a counterclaim against MLM for breach of contract and bad faith. On October 5, 2010, MLM filed a motion for summary judgment.

While both parties seek bifurcation and/or a stay of the claims asserted in this case, they disagree on which claims should be stayed and which claims should proceed. MLM seeks to bifurcate its declaratory judgment claims from Defendant King's bad faith counterclaim, and to stay further discovery related to the bad faith counterclaim until there is a determination on MLM's declaratory judgment action[1]. According to MLM, bifurcation will be conducive to expedition and economy in this case because discovery relating to King's bad faith claim will be expensive and involve expert discovery, and the bad faith claim will be rendered moot if MLM prevails on its declaratory judgment claims.

King generally opposes bifurcation of its counterclaim from the declaratory judgment action, but also requests that I stay all claims and counterclaims in this action pending final resolution of the Iveson/Tepper lawsuit and the MMPN complaint, except the determination of MLM's duty to defendant King in the Iveson/Tepper lawsuit "provided that determination is based solely on the 'four corners' of the subject complaints." According to King, Colorado case law requires that this case be stayed until the settlement of, or a final, non-appealable judgment in, the Iveson/Tepper lawsuit

---

[1] MLM's Motion to Stay Discovery and its Renewed Motion to Stay were referred to Magistrate Judge Hegarty and were denied by Orders dated September 20, 2010 [ECF No. 41] and October 12, 2010 [ECF No. 48].

and the MMPN complaint, because continuing this anticipatory declaratory judgment action will materially and substantially prejudice King's defense of those actions.

II. <u>Analysis</u>:

I first address the issues raised in King's motion to bifurcate and motion to stay concerning whether this declaratory judgment action should proceed in light of the filing of the Iveson/Tepper lawsuit and MMPN complaint.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of an interested party seeking such declaration, whether or not further relief could be sought." 28 U.S.C. § 2201)(a).  The phrase "case or controversy" in the Act refers to the type of "cases" or "controversies" that are justiciable under the Act.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).  However, the district court has discretion in determining whether to hear a declaratory judgment case.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").  Factors the district court should consider include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon

state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

Colorado law is instructive on the propriety of maintaining an anticipatory declaratory judgment action brought to determine coverage or a duty to defend in the insurance context. In *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556 (Colo. 1997), a case decided pursuant to the Colorado Uniform Declaratory Judgments Law, C.R.S. § 13-51-101 *et seq.*, the Colorado Supreme Court held that a factor to consider in determining whether a declaratory action resolving coverage issues is appropriate while an underlying action is pending is whether the declaratory action is "independent of and separable from the underlying action." *Id*. at 561. Where "it could unduly prejudice the insured in the underlying action, a declaratory judgment action prior to entry of a judgment against the insured is not independent and separable and is inappropriate." *Id*. at 562. In addition, the Colorado Supreme Court stated:

> The independent and separable standard helps to clarify some confusion in the law regarding the interrelationship between an anticipatory declaratory judgment action and the insurer's duty to defend versus the insurer's duty to indemnify. The duty to defend pertains to the insurance company's duty to affirmatively defend its insured against pending claims. The duty to indemnify relates to the company's duty to satisfy a judgment entered against the insured. The duty to defend is triggered more easily than is the duty to indemnify. Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the policy *actually* covers the alleged harm. *See Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo.1991). Where there is no duty to defend, it follows that there can be no duty to indemnify. However,

> where there is a duty to defend, there is not necessarily a duty to indemnify.
>
> Declaratory judgment claims are more likely to be independent of and separable from the underlying litigation when the allegations in the underlying complaint do not even give rise to a duty to defend. Where that occurs, it may be appropriate to allow the insurer an opportunity to obtain an anticipatory declaration of its obligations towards its insured prior to the expenditure of considerable resources.
>
> On the other hand, where the duty to defend has arisen, anticipatory resolution of coverage issues is more problematic. In *Hecla*, the insurance companies were found to have a duty to defend against the pending claims, with a reservation of rights if they so chose, despite uncertainty about the companies' ultimate duty to indemnify. We concluded that the issue of coverage, or duty to indemnify would have to await final resolution of the underlying case. Hence, where there is a duty to defend, the duty to indemnify may not be neatly separable from the underlying facts.

*Constitution Assocs.*, 930 P.2d at 563-64.

It is clear that an anticipatory declaratory judgment addressing MLM's right to rescission of the Policy and MLM's duty to defend and indemnify would settle a portion of the controversy and clarify some important legal relations now at issue. I further note that there is no indication that the declaratory remedy is being used for the purpose of procedural fencing, that the maintenance of this action improperly encroaches upon state jurisdiction, or that there is a better or more effective alternative remedy. *See Mhoon*, 31 F.3d at 983.

However, I must also consider whether an anticipatory declaratory judgment on the issue of rescission and MLM's duty to defend and, derivatively, its duty to indemnify, are "independent and separable from the underlying action" and would not cause King

-6-

prejudice in the underlying action.  *Constitution Assocs.*, 930 P.2d at 562-63.

Defendant King asserts that none of the issues relevant to MLM's claims, except for a determination of MLM's duty to defendant King is "independent and seperable" from the Iveson/Tepper lawsuit and the MMPN complaint.  MLM asserts that a determination of the issues raised in this action, and briefed in its recently filed motion for summary judgment, are not factually dependent upon the underlying claims asserted against Defendant King, and can be resolved without prejudice to King.

Because MLM has withdrawn its defense of King in both the Iveson/Tepper lawsuit and the MMPN complaint, a determination of MLM's duty to defend will be determined solely "from the allegations in the complaint, which if sustained, would impose a liability covered by the policy."  *Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004); *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).  "[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."  *Hecla*, 811 P.2d at 1089 (internal citation omitted).  The duty to defend is broader than the duty to indemnify, and whether coverage is ultimately available under the policy is a question of fact.  *Id.*

As discussed in *Constitution Assocs.*, *supra*, declaratory judgment claims are more likely to be independent of and separable from the underlying litigation when the allegations in the underlying complaint do not even give rise to a duty to defend.

However, where there is a duty to defend, the duty to indemnify may not be neatly separable from the underlying facts. Therefore, in this case it is appropriate to first determine whether MLM has a duty to defend and then, if necessary, examine whether resolution of the duty to indemnify is "independent and separable" from the facts in the underlying ligation. I note that a determination of MLM's duty to defend would only involve an examination of the state court complaints to see if allegations there triggered the duty and would not involve an factual or legal matter at issue in the state cases. *See Mhoon*, 31 F.3d at 984.

MLM filed its motion for summary judgment on October 5, 2010. Therein, MLM asserts that the allegations in the Iveson/Tepper lawsuit and the MMPN complaint concerning King's ownership, management, and involvement in various business entities fit squarely within Exclusion (3) of the Policy, and "[w]hen a complaint alleges multiple claims, an insurer has not duty to defend if it can establish that the factual allegations in the underlying complaint reveal a situation that is solely and entirely within the policy's exclusions." *Management Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 37 (Colo. App. 2004) (citing *Cotter Corp.*, 90 P.3d 814, *supra*). Thus, consideration of MLM's duty to defend can be resolved in the context of MLM's motion for summary judgment.

MLM also contends in its motion for summary judgment that Defendant King's alleged misrepresentations on his Policy applications entitles MLM to rescission of the Policy. Resolution of MLM's rescission claim will involve analysis of whether Defendant King misrepresented in his Policy application that (a) for the past 5 years he engaged in

no business other than the practice of law; (2) that he was not the officer or director of any client entity; (3) that he did not have a 10% or more equity interest in any client; and (4) that he did not have any equity interest in real estate development clients. MLM contends that these representations have no relationship to the claims asserted against Defendant King in the Iveson/Tepper lawsuit and the MMPN complaint. In response, Defendant King contends that consideration of MLM's rescission claim is inappropriate because MLM will be unable to establish "knowing" misrepresentations in the context of a motion for summary judgment, and because whether any of the entities involved in the underlying litigation were a "client" of Defendant King's is a "fact question" to be determined in the underlying litigation.

I agree with MLM that it is appropriate for me to consider its rescission claim at this time. It may be that genuine issues of material fact preclude entry of summary judgment in favor of MLM on its rescission claim. However, Defendant King has not demonstrated that responding to Plaintiff's motion for summary judgment will prejudice him. Defendant King may dispute that the real estate development entities involved in the underlying litigation were "clients," however he has not demonstrated that taking a position on that issue now will prejudice him in the underlying litigation. Moreover, resolution of the rescission issue at this time may obviate the need to consider MLM's duty to defend or indemnify Defendant King in the underlying litigation.

III. Conclusion:

I find that consideration of whether MLM had a right to rescind the Policy, and whether MLM has a duty to defend Defendant King in the Iveson/Tepper lawsuit and the

MMPN complaint, as raised in MLM's motion for summary judgment, is "independent and separable from the underlying action" and would not cause Defendant King prejudice in the underlying action. *Constitution Assocs.*, 930 P.2d at 562-63. If, upon resolution of MLM's motion for summary judgment, I find that MLM had a right to rescind the Policy, then I will proceed to address MLM's claim for damages. If I determine that MLM has no duty to defend Defendant King in the underlying litigation, then it follows that it has no duty to indemnify Defendant King, and I will proceed to address MLM's damages issues. *Constitution Assocs.*, 930 P.2d at 563. In either scenario, I need not address Defendant King's bad faith counterclaim. However, where there is a duty to defend, there is not necessarily a duty to indemnify. If I determine that MLM has a duty to defend, I will reexamine at that time whether I should consider MLM's duty to indemnify and whether bifurcation of the bad faith counterclaim is appropriate, or whether a stay of the entire action pending resolution of the Iveson/Tepper lawsuit and the MMPN complaint is appropriate. In the interim, I find that all discovery related to Defendant King's bad faith counterclaim should be stayed until the motion for summary judgment is resolved.

For the reasons set forth herein, it is hereby

ORDERED that Plaintiff Minnesota Lawyers Mutual Insurance Company's ("MLM") Motion to Bifurcate, filed August 3, 2010 [ECF No. 16], is **DENIED WITHOUT PREJUDICE**. It is

FURTHER ORDERED Defendant Joseph R. King's Motion to Bifurcate, filed August, 24, 2010 [ECF No. 23] is **GRANTED IN PART AND DENIED IN PART** as set

forth herein. It is

FURTHER ORDERED that Defendant King's Motion to Stay, filed August 24, 2010 [ECF No. 22] is **DENIED WITHOUT PREJUDICE**. It is

FURTHER ORDERED that Plaintiff's Unopposed Motion for Oral Argument Regarding its Motion to Bifurcate, filed September 20, 2010 [ECF No. 38] is **DENIED AS MOOT**. It is

FURTHER ORDERED that all discovery related to Plaintiff's bad faith counterclaim is **STAYED** pending resolution of Defendant's Motion for Summary Judgment, filed October 5, 2010 [ECF No. 45]. It is

FURTHER ORDERED that on or before **Monday, November 8, 2010,** the parties shall file a joint Status Report, concerning the present status of the Iveson/Tepper lawsuit and the MMPN complaint.

Dated: November 1, 2010

BY THE COURT:

s/ Wiley Y. Daniel  
Wiley Y. Daniel  
Chief United States District Judge